O

# United States District Court
# Central District of California

| | |
|---|---|
| EARTH GEN BIOFUEL INC., a Nevada corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JONATHAN FINK, an individual; DOES 1 through 50, inclusive,<br><br>　　　　　　　　Defendants. | Case № 2:16-cv-07161-ODW (SS)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [27]** |

## I.　INTRODUCTION

Before the Court is Plaintiff Earth Gen Biofuel Incorporated's ex parte application for a temporary restraining order to enjoin Defendant Jonathan Fink from making further sales in its stock and to freeze his assets pending resolution of this case. (ECF No. 27.)  For the following reasons, the Court **DENIES** the application.[1]

## II.　FACTUAL BACKGROUND

Plaintiff is a Nevada corporation headquartered in Los Angeles, California. (Compl. ¶ 1, ECF No. 1.)  Defendant is a resident of Los Angeles County.  (*Id.* ¶ 2.)

---

[1] After carefully considering the papers filed in support of the application, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

On September 23, 2016, Plaintiff filed this case alleging: (1) violations of Securities Exchange Act Section 10(b) and Rule 10b-5; (2) breach of fiduciary duty; (3) unjust enrichment; and (4) common law fraud. (Compl. ¶¶ 13–36.) Plaintiff filed this ex parte application for a temporary restraining order on January 19, 2017, seeking to enjoin Defendant from making further sales in its stock and to freeze Defendant's assets pending resolution of this case. (Appl. 15, ECF No. 27.) Defendant filed an opposition to Plaintiff's application on January 20, 2017. (ECF Nos. 29–30.) Because the parties have presented very different versions of the facts in their submissions, the Court summarizes both versions below.

**A. Plaintiff's Version**

On September 25, 2013, Defendant approached Plaintiff's chief executive officer, George Shen, about helping to register Plaintiff as a publicly traded corporation. (Shen Decl. ¶ 2, ECF No. 27.) Shen thereafter hired Defendant as a consultant. (*Id.* ¶ 3.) However, Shen never made Defendant an officer or employee of Plaintiff. (*Id.*)

Shen indicates that on "several occasions," Plaintiff forged Shen's name, issued himself and other investors stock, and then sold the stock for his personal benefit.[2] (*Id.* ¶¶ 5, 12.) On April 28, 2016, and June 8, 2016, Defendant told Plaintiff's shareholder, Mark Andres, that he needed some of his stock to finance Plaintiff's operations. (*Id.* ¶¶ 6–7.) Believing that the proceeds from these sales would be returned to the company, Andres agreed to surrender a significant number of his shares. (*Id.* ¶ 8.) Defendant then sold that stock for his personal benefit and failed to remit any portion of the proceeds to Plaintiff. (*Id.* ¶¶ 6–7.) After the April 28, 2016 incident, Defendant forged Shen's signature to issue new shares of Plaintiff's stock. (*Id.* ¶ 5.)

On July 13, 2016, and July 17, 2016, Defendant convinced Shen to infuse funds into investor relations. (*Id.* ¶¶ 13, 15.) This drove up the value of Plaintiff's stock.

---

[2] Shen suggests that Defendant last engaged in forgery on July 22, 2016. (*Id.* ¶ 12.)

1  (*Id.* ¶¶ 10, 14.) Once the stock had increased in value, Defendant sold "blocks" of his
2  shares. (*Id.*) Sale of Defendant's shares drove the value of Plaintiff's shares back
3  down. (*Id.* ¶ 16.)

4  At some point in October 2016, Defendant attempted to remove the restrictive
5  ledger from "additional stock."[3] (*Id.* ¶ 18.) He represented to "Corporate Stock
6  Transfer" that Plaintiff had given him authorization to do so. (*Id.*)

7  **B. Defendant's Version**

8  Defendant asserts that he met Shen in March 2012. (Fink Decl. ¶ 2.) Shen
9  sought Defendant's advice about registering one of his companies as a publically
10 traded corporation. (*Id.*) Shen then formed Earth Gen Biofuel Incorporated on
11 August 28, 2012. (*Id.*) That same day, Shen issued Defendant 1,440,000[4] shares of
12 stock in Plaintiff for $1,000. (*Id.* ¶ 3.) At its peak, this issuance equated to roughly
13 1.64 percent of all outstanding shares in the corporation. (*Id.*) Defendant claims that
14 this was the only time he was issued shares of Plaintiff's stock. (*Id.*)

15 Defendant served as secretary of the corporation from August 28, 2012, to
16 September 25, 2012. (*Id.* ¶ 2.) On September 25, 2012, Defendant resigned that post
17 and in October 2012 became a consultant for the corporation. (*Id.*)

18 Defendant categorically denies that Andres ever surrendered shares to him on
19 June 8, 2016. (*Id.* ¶ 8.) Defendant further asserts that he never sold "any" shares
20 "owned by Mark Andres." (*Id.*) Additionally, he claims not to have received
21 "proceeds" from any sale of Andres' shares. (*Id.*) Defendant also denies forging
22 Shen's signature and issuing shares to investors for his personal benefit. (*Id.* ¶ 9;
23 Opp'n 3, ECF No. 29.)

---

[3] It is unclear whether this activity occurred before or after Shen was served with the complaint on October 16, 2016. (*See* ECF No. 10.)

[4] This figure represents the total number of shares Defendant purchased on August 28, 2012, after several reissuances and a stock split. (Fink Decl. ¶ 6.)

Further, Defendant denies that his motivation for encouraging the infusion of funds into investor relations was a desire for personal gain. (*Id.* ¶ 10.) He claims that such investment was necessary for Plaintiff's growth. (*Id.*)

Lastly, Defendant denies representing to "Corporate Stock Transfer" that Plaintiff had given him authority to remove restrictive ledgers from certain stocks. (*Id.* ¶ 11.) He alleges that owners of stock with restrictive ledgers may, under Securities and Exchange Commission ("SEC") guidelines, legally ask a transfer agent to remove such ledgers. (*Id.*)

## LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952). The standard for granting a temporary restraining order "is identical to the standard for issuing a preliminary injunction." *Brown Jordan Intern. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002).

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, the plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm if the preliminary relief is not granted; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of the irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

## III. DISCUSSION

**A. Likelihood of Success on the Merits**

The primary issue in this case is whether Defendant committed fraud. A defendant may be held liable for securities fraud under Rule 10b-5 where he directly or indirectly uses any means or instrumentality of interstate commerce, or the mails or any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, or (b) to make any untrue statement of a material fact, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5. A defendant may be held liable for fraud under California law where he makes: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) with knowledge of its falsity (or scienter); (3) with the intent to defraud; (4) that caused justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).

If the assertions in Plaintiff's declaration are true, then Plaintiff possesses a fair likelihood of success on the merits as to its securities fraud claim, if not its common law fraud claim as well. Plaintiff allegedly issued himself and others stock by forging the name of Plaintiff's CEO George Shen. (Shen Decl. ¶ 5.) He then sold those shares for his own benefit. (*Id.*) This is securities fraud plain and simple; use of a deceitful or manipulative device in connection with the subsequent sale of securities. *SEC v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996). Further, Plaintiff alleges that Defendant made false statements to obtain shares from Mark Andres, and then sold those shares for his personal benefit without remitting any of the proceeds to Plaintiff. (Shen Decl. ¶¶ 6–7.) Again, this may constitute securities fraud because there were false statements made in connection with a subsequent sale of securities. *Fehn*, 97 F.3d at 1289.

However, Defendant disputes Plaintiff's account in its entirety. Defendant asserts that he never forged the signature of Plaintiff's CEO to issue himself stock,

and that all of his stock in Plaintiff was purchased lawfully on August 28, 2012. (Fink Decl. ¶¶ 3, 9; Opp'n 3.) He also claims that Andres never provided him with stock and that he never sold "any" stock "owned by" Andres. (*Id.* ¶ 8.)

Where there is a limited evidentiary record and material facts are in dispute, courts have generally considered the likelihood of success factor to weigh against granting a temporary restraining order. *See Purdum v. Wolfe*, No. C–13–04816 DMR, 2014 WL 171546, at *6 (N.D. Cal. Jan. 15, 2014) ("As the record before the court is limited, the court declines to resolve this factual dispute, and accordingly finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits on this claim."); *Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08–CV1545 IEG (POR), 2008 WL 5427601, at *4 (S.D. Cal. Dec. 30, 2008) (finding that the plaintiff failed to demonstrate a likelihood of success where there was a limited record and disputes of material fact).

Almost every material fact in this case is disputed. Additionally, each side has offered only a single declaration concerning the substantive issues, leaving the Court with an extremely limited record from which to render a decision. As such, the Court follows the lead of other district courts in the Ninth Circuit and finds that the likelihood of success factor weighs against granting the temporary restraining order.

**B. Immediate and Irreparable Injury**

The Court also finds that the immediate and irreparable injury factor weighs against granting the temporary restraining order. To begin, the parties seem to agree that Plaintiff has not engaged in any additional forgery since July 2016 or fraud of any kind since October 2016 when he tried to remove the restrictive ledgers from certain securities without Plaintiff's permission. (Shen Decl. ¶¶ 12, 18.) Further, there is no indication that Plaintiff has continued to sell off his existing stock since this case was filed. Thus, it is unclear why a temporary restraining order is necessary at *this* particular point in time, more than three months after Defendant was served with the complaint.

Plaintiff also presents scant evidence that the potential harm would be irreparable. In the context of evaluating whether to grant a temporary restraining order, harm is irreparable where it extends beyond pecuniary injury. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) ("a party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature").

Here, Plaintiff attempts to dress up straightforward monetary injury as a loss of corporate goodwill. While Ninth Circuit case law allows for the possibility that damage to a corporation's goodwill may be "irreparable," Plaintiff has not put forth any evidence, beyond conclusory statements in the application itself, that Defendant's actions have caused or will cause meaningful damage to its reputation. (Appl. 9–10); *see also Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). The complaint and Plaintiff's declaration are completely devoid of any mention of corporate goodwill or reputational injury; these submissions do not indicate that investors view Plaintiff less favorably or that they are less inclined to invest in Plaintiff as a result of Defendant's alleged activities. *See* Fed. R. Civ. P. 65(b)(1) (an ex parte application for a temporary restraining order must be supported by specific facts in "an affidavit or a verified complaint"). Because there does not appear to be an immediate risk of irreparable harm, the Court finds that the second factor weighs against granting the temporary restraining order.

**C. Balance of Equities**

The third factor balances potential harm to the plaintiff in the absence of a temporary restraining order with potential harm to the defendant if a temporary restraining order is granted. *Johnson v. Macy*, 145 F. Supp. 3d 907, 920 (C.D. Cal. 2015). The Court finds that the potential harm to Defendant outweighs the potential harm to Plaintiff. While there is a chance Plaintiff might experience additional

downward pressure on its share price if Defendant continues to sell off his stock, Defendant's small stake in the corporation makes it unlikely that his activities are capable of delivering a fatal blow to Plaintiff.[5] (*See* Fink Decl. ¶ 3.) Conversely, a total asset freeze is likely to have a crippling effect on Defendant. It is unclear how Defendant, as an individual, would be able to cover his day-to-day expenses for the duration of this potentially year-long lawsuit if such a freeze is put in place. For these reasons, the Court finds that the balance of equities factor weighs against granting the temporary restraining order.

**D. The Public Interest**

Neither party discusses the public interest factor. As the other three factors weigh against granting the temporary restraining order, the Court finds it unnecessary to address the public interest factor. *See Melamed v. Herold*, No. 215CV05524ODWJEM, 2015 WL 6870009, at *4 (C.D. Cal. Nov. 6, 2015) (holding that it is not necessary to address the public interest factor where the other three *Winter* factors weigh against granting a temporary restraining order).

## IV. CONCLUSION

Because three out of the four *Winter* factors weigh against granting a temporary restraining order, Plaintiff has not made "a clear showing that [he] is entitled to such relief." 555 U.S. at 22. The Court therefore **DENIES** Plaintiff's application for a temporary restraining order. (ECF No. 27.)

**IT IS SO ORDERED.**

January 24, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[5] The Court also finds that it is unlikely Plaintiff would be able to engage in additional forgery or fraud now that Defendant is aware of his tactics.